IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CURTIS CURRY,                                    )
                                                 )
            Plaintiff,                           )
                                                 )        No. 10 CV 8241
      v.                                         )
                                                 )        Hon. Charles R. Norgle
CITY OF CHICAGO,                                 )
                                                 )
            Defendant.                           )

## OPINION AND ORDER

Plaintiff Curtis Curry ("Curry") sues Defendant City of Chicago (the "City") for race discrimination, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1983, and for violation of, and retaliation under, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Before the Court is the City's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND

### A. Local Rule 56.1

The facts of this case are largely undisputed, in part because Curry, who at all times has been represented by counsel, failed to comply with the requirements of United States District Court for the Northern District of Illinois Local Rule 56.1. As discussed below, the Court accepts as true all material facts submitted by the City and not properly disputed by Curry.

"District courts have broad discretion to enforce and require strict compliance with their local rules." Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 655 (7th Cir. 2011) (citing Elustra v. Mineo, 595 F.3d 699, 710 (7th Cir. 2010)). Pursuant to Local Rule 56.1, a litigant

opposing a motion for summary judgment must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Curry failed to respond to approximately 175 out of 295 paragraphs of the City's statement of material facts. Accordingly, those facts are deemed admitted. See Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." (internal quotation marks and citation omitted)).

In support of his various denials of the City's statement of facts, Curry cites exclusively to his own declaration. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, Curry's declaration is largely based on hearsay and speculation, not personal knowledge. See Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009) (stating that "to defeat a motion for summary judgment, [a party] may rely only on admissible evidence" and if "evidence is inadmissible hearsay, [courts] may not consider it"); Rogers v. City of Chi., 320 F.3d 748, 751 (7th Cir. 2003) ("[S]elf-serving affidavits without factual support in the record do not create a genuine issue of material fact."). For example, without citation to the City's policy or a specific personnel record, Curry states

> The City did not utilize conduct review requests to document the problems of many employees similarly situated to me such as Tom Shield, who on April 21, 2009, was taken to jail in handcuffs from his repeated harassment of Maria Mendoza. Mr. Mendoza's personnel file does not reflect this occurrence and he was not terminated for this conduct. Likewise, the city did not use conduct review requests to address any of the concerns that I raised against my harassers.

Decl. of Curtis Curry ¶ 8. Accordingly, the portions of Curry's declaration that are not based on personal knowledge are stricken and will not be considered in support of his opposition to summary judgment.

In addition, Curry fails to submit a Local Rule 56.1(b)(C)(3) statement of additional material facts that require the denial of summary judgment. The local rule provides that an opposing party shall file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(C). The additional facts shall not exceed "40 separately-numbered statements" without prior leave of court. Id.

To the extent that Curry's declaration purports to be a statement of additional material facts, the Court rejects that characterization for two reasons. First, as discussed above, Curry fails to provide citations to evidence that would support his proposed facts. Second, Curry's declaration contains seventy-two paragraphs, which far exceeds Local Rule 56.1's limit of forty numbered paragraphs in a statement of additional facts without seeking leave of court. See LR 56.1(b)(3)(C). Therefore, the Court declines to construe Curry's declaration as a statement of additional material facts.

Lastly, Curry attaches approximately 121 pages in supplemental exhibits to his response to the City's motion. While Curry mentions the exhibits in his declaration, he provides no authentication or clear explanation as to their purpose. See Decl. of Curtis Curry ¶¶ 3-5. In his response brief, Curry describes a portion of the documents as "over 25 written complaints," Pl.'s Resp. to Def.'s Mot. for Summ. J. 7, while the remainder of the documents reflect "close to 50 errors over a short period of time performed by other service writers" which he "in many instances corrected their errors," id. at 10. Because the supplemental exhibits overwhelmingly

constitute hearsay, and are otherwise improperly authenticated, they are stricken and will not be considered in opposition to the City's motion. See Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment" and "[a] party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."); see also A. B. Leach & Co. v. Peirson, 275 U.S. 120, 128 (1927) (Holmes, J.) ("A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts.").

Accordingly, the Court ignores the proposed facts that Curry attempts to incorporate in his declaration, supplements, and response brief to the instant motion. See Cichon v. Exelon Generation Co., 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed." (citing Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995)).

## B. Facts

Curry worked for the City's Department of Fleet Management as a service writer from 2001 to 2010. Among Curry's duties as a service writer, he conferred with drivers of City vehicles and equipment to determine what repairs needed to be completed, generated work orders using specific codes corresponding to the necessary repairs, and called dispatch when a vehicle was ready to be picked up and returned to use. Throughout Curry's employment, he reported to his supervisor, Ruth Figueroa ("Figuero").

As part of his duties, Curry and other service writers worked on location with Fleet Management foremen. The foremen were responsible for overseeing the service writers—

4

including Curry—to ensure that the work was being done properly and safely. However, the foremen did not have authority to hire, fire, demote, transfer, or discipline service writers. Curry worked with foremen Jim Malozzi ("Malozzi") and Mike Zavala ("Zavala").

Throughout the entirety of Curry's employment, the City maintained a set of personnel rules which, *inter alia*, outlined the City's progressive disciplinary policy. As part of the policy, conduct review requests were filed for employees believed to be in violation of the rules. After a conduct review request was submitted, a pre-disciplinary meeting was held where the employee at issue could provide his or her version of events. Subsequent disciplinary action began with a written reprimand, a series of suspensions of increasing duration, and ultimately termination.

It is undisputed that during Curry's tenure as a service writer, his supervisor, Figuero, received numerous complaints from other service writers and foremen about Curry's work, insubordination, and threatening behavior—resulting in the foremen calling the police on at least two occasions. Figuero documented her first concern about Curry on July 18, 2003, when she prepared a memorandum to the Fleet Management's Assistant Commissioner regarding Curry's alleged insubordination. In December of 2006, the City began to review potential disciplinary action against Curry. In his deposition, Curry admitted that his complaints of harassment on the basis of his race, African-American, did not begin until after the City initiated pre-disciplinary meetings with him.

The first pre-disciplinary meeting occurred on January 25, 2007. Both Figuero and Malozzi submitted conduct review requests prior to the meeting. On December 21, 2006, Malozzi filed a conduct review request detailing an alleged incident where Curry became agitated and insubordinate when Malozzi asked him to close the door to the service officer, as well as describing prior instances of Curry's insubordination and work errors. Figuero prepared

a conduct review request on December 27, 2006, reporting Curry for errors in his work and insubordination. Figuero and Malozzi attended the meeting, along with Curry who was represented by the union through Luther Woodruff ("Woodruff"). It is undisputed that a union representative was present on behalf of Curry at all subsequent pre-disciplinary meetings as well. Paul Plantz ("Plantz"), the Administrative Manager of Fleet Management's Human Resource Division and Labor Relations, presided over the pre-disciplinary meeting. During the meeting, Curry admitted that he made mistakes in his work. Curry also claimed that he was being picked on and harassed; but when Curry was asked how he was being harassed, he said he was being harassed for work errors and violations—not because of his race. At one point, those present described Curry as becoming loud and belligerent, and Curry admits that he told them "God is the judge." Decl. of Curtis Curry ¶ 24. After the meeting, on January 31, 2007, the City issued Curry a written reprimand for violation of the personnel rules.

On February 2, 2008, Figuero filed a memorandum describing how Curry failed to complete a work order. On March 20, 2008, Figuero filed another conduct review request for Curry, stating that he used improper codes. Malozzi filed a conduct review request on March 26, 2008, describing an alleged incident of insubordination where Curry refused to pull up a job from the work request query on the computer system. Based on the aforementioned complaints, another pre-disciplinary meeting was held on April 10, 2008, where Curry was once again represented by the union. As before, Curry admitted that he made mistakes in his work, and claimed that he was being picked on and harassed for his work performance. On April 22, 2008, the City found Curry in violation of personnel rules and issued him a one-day suspension.

Disciplinary reports against Curry continued. On June 30, 2008, Figuero prepared a conduct review request for Curry based on two incidents where Curry refused to complete a

work order and was insubordinate to Malozzi. Figuero and Malozzi prepared conduct review requests on August 12, 2008 and August 14, 2008 because Plaintiff allegedly refused to clock out for his lunch break. After reviewing Curry's conduct review requests, Plantz held another pre-disciplinary meeting on August 22, 2008, where Curry was represented by the union. Curry once again claimed that he was being harassed for violating the personnel rules—not on the basis of race. Curry was found to be in violation of the personnel rules and received a three-day suspension on September 19, 2008.

Following another conduct review request filed by Figuero against Curry for faulty work, a pre-disciplinary meeting was held on November 14, 2008. On December 5, 2008 the City issued Curry a five-day suspension for violation of the personnel rules. Subsequently, Curry filed his first Equal Employment Opportunity Commission ("EEOC") charge on January 27, 2009, claiming that his suspension was discriminatory and retaliatory on the basis of race. Curry also appealed his suspension to the Human Resources Board. A hearing for the appeal was conducted, and Curry was represented by the union. The hearing officer concluded that the City had proved by a preponderance of the evidence that Curry had violated the personnel rules. That decision was upheld by a three-person panel on April 14, 2009.

Plantz held another pre-disciplinary meeting on January 26, 2009, based on five conduct review requests filed against Curry for poor performance and insubordination from December 9, 2008 through January 14, 2009. After the hearing, on February 11, 2009, the City issued Curry a ten-day suspension for violation of the City's personnel rules.

Figuero filed two more conduct review requests against Curry on March 4, 2009 and March 5, 2009 because Curry failed to call in on March 2, 2009 and report that he would be absent from work the following day, and for defective work. Based on Plantz's review of the

conduct review requests, a pre-disciplinary hearing was held on March 9, 2009 and the City issued Curry a fifteen-day suspension on March 31, 2009 for violation of its personnel rules. Thereafter, on April 7, 2009, Curry filed a second EEOC charge alleging race discrimination and retaliation in connection with his fifteen day suspension. Curry also appealed his suspension, which was upheld by a neutral panel upon the recommendation of a hearing officer following a full hearing.

Curry admits that by October 7, 2009, he had made a significant number of errors in his work. Two conduct review requests followed, resulting in a pre-disciplinary meeting conducted by Plantz on November 2, 2009. It is undisputed that, at the meeting, Curry failed to provide an excuse for his numerous work errors. Curry continued to allege, as he had in all prior and subsequent pre-disciplinary meetings, that he was being harassed on the basis of errors and violations in his work. The City found that Curry violated the personnel rules and issued a twenty-nine-day suspension on November 4, 2009. In response, Curry filed a third EEOC charge against the City on November 10, 2009, challenging his latest suspension on the basis of racial discrimination and retaliation.

It is undisputed that Curry continued to make errors in his work, to act in an insubordinate manner, and to fail to carry out his duties between December of 2009 and February of 2010. A Statement of Charges and Explanation of Evidence against Curry was prepared by the City's Law Department on March 30, 2010. The statement informed Curry that his discharge was under consideration. Curry responded to the statement on April 5, 2010 in a half page letter. The letter states:

> After review of the presented documentation it is noted that yes there are some mistakes. This is not evidence that I should be terminated. All of the service writers as well as all of the city workers have made mistakes. It appears that I

have been singled out by the City of Chicago in order to terminate my employment.

An example of this is the misleading statement that I am rude to my supervisor. The fact is how can an email be rude?

. . .

Again, it is my belief that I have been singled out and treated differently then [sic] my co-workers.

Def.'s Local R. 56.1(A)(3) Statement of Undisputed Material Facts Ex. 46. Based on the statement of charges and Curry's response, Al Fattore ("Fattore"), the Acting Commissioner of Fleet Management, decided to terminate Curry's employment with the City on April 8, 2010. It is undisputed that when terminating Curry's employment, Fattore had no knowledge of Curry's race or his numerous complaints against his foremen and supervisor.

Meanwhile, as a result of Curry's behavior toward her at the pre-disciplinary meetings, in 2010, Figuero filed a Violence in the Workplace Complaint against Curry. While Curry disputes that he made any threats to Figuero at the meetings, she alleges that he said, among other things, that she was a traitor, had betrayed him, and was "'just as white' as his foremen." Def.'s Local R. 56.1(A)(3) Statement of Undisputed Material Facts ¶ 233. The City received witness statements in connection with Figuero's complaint from Figuero, Zavala, Figuero's former supervisor Linda LaVelle, Plantz, and service writer Stephen Vasko. Ultimately, Figuero's Violence in the Workplace Complaint against Curry was sustained and the City recommended suspension, in addition to violence in the workplace and anger management training for Curry. However, by the time the investigation completed, Curry's employment had already been terminated by Fattore.

Curry filed his fourth and final EEOC charge against the City on April 7, 2010, alleging discrimination, retaliation, and hostile work environment. In alleging retaliation, Curry provides a list of "Caucasian" or "non-black" service writers whom he alleges performed substantially

9

similar work and whom he believes received preferable or better treatment: Tom Steele, Constance Downes, Sandra Gruenwald, Thomas Shield, Maria Mandoza, Stanley Wilczak, Craig Grieshaber, and Mark Kountis.

In all of Curry's complaints to his supervisors and the City, he alleged that his work was being "nit picked" because of his race, but he failed to provide the City with any evidence to substantiate his claims. Curry admits that no one, including his supervisors, ever said anything derogatory about his race. However, Curry believed that Malozzi's actions were race-related because of all of the errors that he found in his work.

Curry further stated that despite his complaints, he was able to overcome all problems related to the way in which he was treated, and his work performance did not change. Curry admits that he made mistakes, used incorrect codes, made errors in work orders, and was generally not a perfect employee. It is undisputed that both Figuero and Plantz investigated all Curry's complaints, and found each one to be without merit. Further, the Human Resources Board considered Curry's complaints upon each appeal of his suspensions, and ultimately determined them to be without merit. Despite Curry's allegations in his complaint in instant action, he testified that "I still right today don't understand why I was discharged." Def.'s Local R. 56.1(A)(3) Statement of Undisputed Material Facts ¶ 295.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the

evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi, 647 F.3d at 656 (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "[F]actual disputes must be both material and genuine. . . . And a factual dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Carroll v. Merrill Lynch, 698 F.3d 561, 564 (7th Cir. 2012) (internal quotation marks and citations omitted). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322) (alterations in original).

**B. Abandonment of Claims**

As an initial matter, the Court notes that Curry has effectively abandoned his claims for race discrimination pursuant to Title VII and § 1983 and his claims under the FMLA. Curry "failed to present facts or develop any legal arguments on these issues"; instead, Curry's response focuses exclusively on his hostile work environment and retaliation claims. Little v. Mitsubishi Motors N. Am., Inc., 261 F. App'x 901, 903 (7th Cir. 2008); see also Hannemann v. S. Door Cnty. Sch. Dist., 673 F.3d 746, 754 (7th Cir. 2012) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." (citing Liberles v. Cnty. of Cook, 709 F.2d 1122, 1126 (7th Cir. 1983))). Therefore, only Curry's claims for hostile work environment and retaliation pursuant to Title VII and § 1983 remain.

**C. Hostile Work Environment**

To prove a claim for hostile work environment, Curry must show "(1) that [his] work environment was both objectively and subjectively offensive; (2) that the harassment was based on [his] race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." Vance v. Ball State Univ., 646 F.3d 461, 469 (7th Cir. 2011).

"In evaluating the severity and pervasiveness of the conduct, [courts] examine 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Smith v. Northeaster Ill. Univ., 388 F.3d 559, 566 (7th Cir. 2004) (quoting Russell v. Bd. of Trs. of Univ. of Ill. at Chi., 243 F.3d 336, 343 (7th Cir. 2001)). "Ultimately, to satisfy the severe or pervasive prong, the plaintiff must show that the work environment was both subjectively and objectively offensive. In other words, the

environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Id. (internal quotation marks and citation omitted).

Here, Curry admits that he was able to overcome all problems related to his complaints and that his work performance did not change. He further admits that he never heard a co-worker or a supervisor make a comment about his race, let alone an "offensive utterance." Id. Curry fails to present any evidence that harassment occurred because of his race. Curry only complains that his work was "nit-picked," but he does not explain how the admitted errors in his work were related to race. Therefore, Curry fails to show that he suffered severe and pervasive harassment on the basis of his race.

Even if he could, Curry is unable to establish a basis for employer liability. "Once aware of workplace harassment, 'the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent harassment from recurring.'" Vance, 646 F.3d at 471 (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 978 (7th Cir. 2004)). A "prompt investigation is the hallmark of reasonable corrective action." Id. at 473 (internal quotation marks and citation omitted). Here, it is undisputed that all of Curry's complaints were promptly investigated and considered by Figuero, Plantz, and the Human Resources Board. In addition, not only was Curry allowed to be present and provide his side of the story at his disciplinary meetings, but he was also represented by a member of the union throughout the procedures. Curry's dissatisfaction with the City's findings and rejection of his complaints following its investigation does not create a basis for employer liability. See Lapka v. Chertoff, 517 F.3d 974, 985 (7th Cir. 2008) ("The measures taken by employers will often 'not meet the plaintiff's expectations'" but "Title VII requires only that the employer take

steps reasonably likely to stop the harassment." (quoting Berry v. Delta Airlines, 260 F.3d 803, 813 (7th Cir. 2001))). Accordingly, Curry fails to prove a claim for hostile work environment.

## D. Retaliation

Lastly, Curry alleges claims for retaliation against the City. To defeat a motion for summary judgment on a retaliation claim, Curry must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011).

### 1. Direct Method

Under the direct method of proof, Curry must be able to show through either direct or circumstantial evidence: "(1) that [he] engaged in a statutorily protected activity; (2) that [he] suffered a materially adverse action by [his] employer; and (3) there was a causal link between the two." Id. While direct evidence "essentially requires an admission by the employer . . . circumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

It is undisputed that Curry was engaged in protected activity by filing EEOC charges and that he suffered an adverse employment action by being terminated. In support of a causal connection, Curry argues that, though his work performance did not change, the City did not begin disciplining him until after he began writing complaints. However, that statement is directly contradicted by Curry's deposition testimony wherein he stated that he did not begin filing complaints of harassment until after the City took disciplinary action against him. It is well established that "a party may not defeat summary judgment by offering testimony that

contradicts prior sworn testimony without explaining the contradiction or attempting to resolve the disparity." Solaia Tech. LLC v. ArvinMeritor, Inc., 361 F. Supp. 2d 797, 807 (N.D. Ill. 2005) (citing Cleveland v. Policy Mgmt. Sys., Corp., 526 U.S. 795, 806 (1999)). Because Curry fails to offer any explanation as to the disparity in his statements, the Court rejects his argument.

Curry also argues that other service writers frequently made similar errors without receiving discipline. In support, Curry points to the numerous supplemental exhibits which allegedly "reflect close to 50 errors over a short period of time performed by other service writers" whose personnel records do not contain disciplinary action. Pl.'s Resp. to Def.'s Mot. for Summ. J. 10. However, as noted above, the Court strikes Curry's supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay. Additionally, Curry fails to provide any evidence of the personnel files of other service writers to support his argument. Here, "[t]he record is simply void of the bits and pieces of circumstantial evidence necessary to establish a causal link. . . ." Overly v. Keybank Nat'l Ass'n, 662 F.3d 856, 866 (7th Cir. 2011).

Furthermore, Curry fails to provide evidence that anyone in a decision-making capacity had retaliatory animus against him. The "cat's paw" theory provides that "it is appropriate to impute discriminatory or retaliatory animus to a decisionmaker when the party nominally responsible for a decision is, by virtue of [his] role in the company, totally dependent on another employee to supply the information on which to base that decision." Hicks v. Forest Pres. Dist., 677 F.3d 781, 790 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, the undisputed evidence shows that Curry's suspensions were upheld by neutral third party appellate boards, and that Curry was ultimately terminated by Fattore, who did not know about Curry's complaints of harassment or race when he made the decision to terminate his employment.

Accordingly, Curry fails to show that anyone in a decision making capacity had retaliatory animus against him. Curry therefore fails to prove retaliation through the direct method.

### 2. Indirect Method

Under the indirect method, a prima facie case of retaliation is established by showing that: "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations, i.e., he was performing his job satisfactorily; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." Harper, 687 F.3d at 309. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason" for the retaliation. Id. "If the defendant meets its burden, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." Id.

While Curry satisfies the first and third factors, he fails to provide evidence that he was meeting his employer's legitimate expectations, and that similarly situated employees were treated more favorably. Indeed, Curry admits that he was not meeting the City's legitimate expectations. It is undisputed that Curry made coding errors, made mistakes on work orders, and was insubordinate. It is further undisputed that Curry's behavior at the pre-disciplinary meetings caused Figuero to file a Violence in the Workplace complaint against him, which was upheld after Curry's termination. The Court rejects Curry's argument that he was meeting the City's legitimate expectations because all service writers and city employees make mistakes.

In addition, Curry fails to provide any admissible facts showing that the similarly situated requirement has been satisfied. Eaton v. Ind. Dep't of Corr., 657 F.3d 551, 558 (7th Cir. 2011). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same

supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, Curry only provides the names of other service writers without any evidence to support a further comparison. Therefore, Curry fails to show a prima facie case of retaliation.

In any event, because Curry admits to committing the work errors and violations that formed the basis of his suspensions and ultimate termination, he fails to show that the City's stated reason for termination is pretextual. Accordingly, Curry fails to prove retaliation under the indirect method of proof.

## III. CONCLUSION

For the foregoing reasons, the City's motion is granted. Curry fails to meet his burden to demonstrate his claims of racial discrimination, hostile work environment, retaliation, and violation of the FMLA. The Court enters summary judgment in favor of the City on all claims.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 25, 2013